PER CURIAM.
Marcus Benjamin Harris appeals from a two-year sentence imposed following a finding that he had violated the terms and conditions of his probation. We find the appeal to be meritless, in fact frivolous, and we affirm.
This case has been before us once previously. Harris v. State, 495 So.2d 243 (Fla. 2d DCA 1986). Upon a plea of nolo conten-dere to uttering a forged instrument Harris was placed on probation for a period of three years beginning January 31, 1984. § 831.02, Fla.Stat. (1981). In November of that same year he was charged with violation of probation, and on May 2, 1985, was found guilty and sentenced to five years in prison. The trial court’s order of revocation stated that Harris had violated probation in six different respects. However, the record before us contained an affidavit of violation which included only two of the six charges, and neither of these two allegations resulted in a finding of guilt. Because a trial court cannot revoke probation on the basis of conduct not charged by affidavit we were compelled to reverse. Butler v. State, 450 So.2d 1283 (Fla. 2d DCA 1984). In so doing we noted that “the transcript of the probation revocation hearing reveals that the trial judge may have had before him an amended affidavit charging the remaining four violations” which for unknown reasons was not included in the record on appeal and may not have been formally filed in circuit court. 495 So.2d at 244. For this reason, rather than requiring Harris’s discharge we remanded “for further proceedings.” Id.
A partial recitation of those “further proceedings” follows. Pursuant to Harris’s directions, the court reporter has transcribed a number of hearings occurring subsequent to our original reversal. Very few of these are germane to the issue before this court. We will discuss the high points in seriatim. On November 12, 1986, the circuit court addressed this court’s mandate and requested comment from those present. The state suggested that a revocation hearing de novo was unnecessary and that the court’s only responsibility should be to locate the amended affidavit of violation. Harris, who was at this time appearing without counsel, objected that the amended affidavit “wasn’t in the record” and was therefore “after the fact.” The public defender was appointed to represent Harris and the matter was continued.
On November 17 this same public defender reported that Harris “is not satisfied with our services and wants to hire a private attorney.” Harris requested a continuance in order to perform this task. On November 26 Harris asked the court “to appoint me a private attorney of my choice,” although he later suggested that if the court could continue the case for another month his family might procure funds to hire an attorney. Harris next appeared before the court on December 17, 1986, at which time the court inquired whether he had retained counsel. Harris responded that “I requested the last time I was here for the court to appoint a private counsel of my choice.” When the court advised that Harris could not have appointed counsel of his choice, Harris alleged that “there’s been a gross conflict with the public defender’s office two times in this case.” A public defender then came forward and confirmed that Harris had been represented by court-appointed private counsel at the original hearing because “we conflicted.” At this point a private attorney was appointed.
This attorney orally moved to withdraw from the case February 6,1987. He stated that his heavy trial schedule did not allow him to consult with Harris as often as Harris expected and that “I just do not have the time to go through Mr. Harris’s numerous appeals.” Harris objected to his continued detention since no affidavit or warrant had been filed. The circumstances of this court’s reversal were then discussed and the court concluded that “a portion of that further proceeding is to see if in fact an amended affidavit existed.” Another attorney who was present in the courtroom *451 agreed to accept the case, but Harris stated he “would prefer to plead on my own.” Eventually Harris agreed to the substitution of counsel. A brief history of the case was recited for the benefit of the new attorney. In order to facilitate consultation with counsel, Harris was released from confinement on what the court described as a “furlough.” Finally, the court directed the probation office to consult the clerk and derive “a definitive answer as to where in the world that original ... amended affidavit is,” and stated
There is no reason in the world why this court conducts violation of probation hearings on paper work supplied by the Department of Corrections alleging a violation of probation and then those affidavits not be filed, to then have the Court of Appeals [sic] not knowing what the court was relying on, have to remand it for yet further proceedings. That is a waste of judicial manpower, time and economy....
The dispositive event occurred April 13, 1987, when probation officers, a clerk, and Harris’s original counsel were convened to testify about the existence and whereabouts of the amended affidavit. The principal witness, a probation officer, stated that “under normal conditions” an amended affidavit is filed with the clerk of the court prior to the violation hearing, with copies retained for the Department of Corrections file, but that “[i]t does happen on occasion that because of very last minute circumstances, the amended affidavit comes into the court possibly the very same morning as a hearing without having the time to take it down to the clerk’s office.” He had no personal knowledge as to what had become of the original copy of the amended affidavit, which he described as “missing.” However, the officer obtained a copy of the original from his office file. This was introduced as court’s exhibit 1.
The trial court then reexamined a transcript of the original revocation hearing. The judge noted that he had reviewed an affidavit of violation paragraph by paragraph, in open court, making a finding at each step whether sufficient evidence had been received to convict Harris on that individual violation. The court concluded that “there was, in fact, a document that the court was referring to which had six grammatical paragraphs alleging violations of conditions [and] they appear to be the same six allegations which are contained in ... court’s exhibit 1.”
Based on this reconstruction of the record the court denied Harris’s motion to dismiss the amended affidavit of violation and ruled that the revocation would remain in effect. The court did find that the order revoking Harris’s probation did not conform to his oral pronouncements at the original revocation proceeding, and it directed that an amended order be prepared correctly setting forth the charges for which Harris was convicted. The court further found that the original five-year sentence, which represented a departure from the sentencing guidelines, was based upon reasons no longer valid in light of intervening case law from this court and from the Florida Supreme Court. Instead, the court imposed a sentence of two years, which reflected the guideline recommendation of “any nonstate prison sanction” enhanced one cell for the violation of probation. Fla.R.Crim.P. 3.701(d)(14). On April 29 the court convened a “status hearing” at which point counsel advised the court that Harris, with gain time and credit time, had served the entire two-year sentence and so was eligible for immediate release. The court agreed.
We find that this appeal, as well as the time-consuming and occasionally outrageous demands and charges made by Harris following the previous appeal, are occasioned primarily by Harris’s inability or unwillingness to understand the mandate of our prior decision. The course taken by the trial court more than adequately addressed our concerns, and the court accurately characterized its mission as an. attempt to reconstruct the record. Having satisfied itself that the amended affidavit of violation existed, but was misplaced, the court took the only correct course by reaffirming the violation of Harris’s probation.
*452 We recognize that a trial court has no jurisdiction to revoke a term of probation once that term has expired unless appropriate steps to revoke or modify were taken prior to the date of expiration. Clark v. State, 402 So.2d 43 (Fla. 4th DCA 1981); Carpenter v. State, 355 So.2d 492 (Fla. 3d DCA 1978); State ex rel. Ard v. Shelby, 97 So.2d 631 (Fla. 1st DCA 1957). However, if a warrant for the probationer’s arrest, based on alleged violations of probation, issues during the term of probation, the court has jurisdiction to consider the alleged violations even if the probationary term expires before the time of arrest and/or hearing. Carroll v. Cochran, 140 So.2d 300 (Fla.1962); Hopson v. State, 339 So.2d 1152 (Fla. 2d DCA 1976). There is no doubt but that a warrant for Harris’s arrest issued in timely fashion, because the violation hearing itself occurred prior to the expiration date of Harris’s probation. The trial court unquestionably had jurisdiction to conduct the May 2, 1985, hearing.
Furthermore, we find it immaterial that Harris was acquitted on those violations charged in the original affidavit, because it is clear that everyone, at the time of the original hearing, knew of and was prepared to go forward on the amended affidavit. This is not a case of conferring jurisdiction solely by acquiescence. Cf. Carpenter, supra. The amended affidavit may have involved “an independent predicate for revocation of the probation,” Ard v. Shelby, 97 So.2d at 632, such that it too should have been filed within the probationary term. However, that is exactly what took place in this case. Harris simply cannot construct a plausible claim of prejudice out of the fact that someone, however carelessly, lost the affidavit at some point after the original hearing.
Affirmed.
DANAHY, C.J., and SCHEB and SCHOONOVER, JJ., concur..